IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


JOSHUA ALAN WILLIAMS                                        PLAINTIFF


v.                              No. 4:09-cv-459-DPM


MD COWAN, INC.; TESCO SERVICES,
INC.; JEFFREY ANDERSON; and RIG
TECHNOLOGY, LTD                                         DEFENDANTS


CHARTIS CASUALTY COMPANY/
AMERICAN INTERNATIONAL SOUTH
INSURANCE COMPANY AND GLOBAL
RECOVERY SERVICES                                        INTERVENOR


## ORDER

In 2007, twenty-one-year-old Joshua Williams lost his right leg in a
drilling accident.  He brought this diversity action against MD Cowan and
Rig Technology for strict products liability, negligent design, and failure to
warn; and against Anderson and Tesco for negligence.  Nine motions are
ripe.  The Court apologizes for its delay in ruling.

**1. The Facts.**  DeSoto Drilling employed Joshua Williams.  In April of
2007 he was working on Rig #9, which MD Cowan designed and

manufactured.   Rig Tech supplied the hoisting system—also called the traveling blocks or drawworks—incorporated into Rig #9.  Tesco Services had a tool attached to the top drive of DeSoto's rig.  Jeffery Anderson, a Tesco employee, was responsible for operating that particular tool.

On the day of the accident, the top drive of the rig misaligned. Another DeSoto employee told Williams and a co-worker to climb the mast and realign the top drive.   The co-worker finished his part of the realignment and came down.   Williams, however, had to make more adjustments.

Derrick Long, another DeSoto employee, was acting as the rig operator or driller.  When Williams's co-worker got down, he told Long that he was finished with his repairs.   Unaware that Williams was still working on the top drive, at least two DeSoto employees made a decision to resume operations.  Williams alleges that Anderson, the Tesco employee, also participated in that decision, telling Long "lift it up" or words to that effect.

Long engaged the clutch; and the drawworks moved upward, catching Williams's leg in a pinch point.  Among other injuries, Williams's right leg had to be amputated above the knee.

The parties' main factual disputes center around (1) what additional steps, if any, Williams and his co-workers could or should have taken to prevent the accident; (2) whether Rig #9 complied with appropriate industry safety standards; and (3) whether Rig #9 was defective and unreasonably dangerous.  Williams moves for partial summary judgment against all Defendants, alleging that the only issue remaining for trial is damages.  The Defendants respond with cross-motions for summary judgment.  Finally, all parties seek to exclude opinions from opposing experts under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

**2.  The Legal Standard.**  Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  The Court views the evidence on each motion in the light most favorable to the nonmoving party.  *Gazal v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 647 F.3d 833, 837

(8th Cir. 2011).   If the moving party shows that no genuine dispute of material fact exists on a particular issue, then the nonmoving party must meet proof with proof to show otherwise.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).  If no reasonable jury could return a verdict for the non-moving party in light of all the proof, then summary judgment is appropriate.  *RSBI Aerospace, Inc. v. Affiliated FM Insurance Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

  **3.  MD Cowan's Liability.**  Williams makes three claims against MD Cowan:  (1) strict liability for defective design; (2) failure to adequately warn; and (3) negligent design.

  In order to succeed on his strict-liability design claim, Williams must prove: (1) damages; (2) that MD Cowan was engaged in the business of manufacturing, assembling, selling, leasing or distributing the rig; (3) that MD Cowan supplied the rig in a defective condition that made it unreasonably dangerous; and (4) proximate cause.  *Pilcher v. Suttle Equipment Co.*, 365 Ark. 1, 6, 223 S.W.3d 789, 794 (2006).  Williams and MD Cowan dispute only the last two elements.

-4-

Williams is not entitled to summary judgment against MD Cowan on this claim.  First, when viewed in the light most favorable to MD Cowan, the evidence does not show that the company supplied the rig in a defective condition that was unreasonably dangerous.  Williams points to MD Cowan's failure to comply with standards from the American National Standards Institute and the American Petroleum Institute as evidence that the rig was defective and unreasonably dangerous.  The ANSI and API standards, however, are not the law; they are voluntary standards.  Any violation of ANSI or API standards is only evidence of defect; it does not establish that the rig was defective as a matter of law.  *Poches v. J. J. Newberry Co.*, 549 F.2d 1166, 1168 (8th Cir. 1977).

Further, MD Cowan has met proof with proof:  it has offered its own expert testimony that the company did not run afoul of ANSI or API standards and that the rig was neither defective nor unreasonably dangerous. *Conseco Life Insurance Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010).  It is not this Court's place to weigh the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Instead, a jury must consider the credibility of the parties' experts, determine what the

applicable industry standards were, and decide whether the rig was defective.

Williams's motion on this claim also fails on causation.   Under Arkansas law, "causation is almost always a question of fact for the jury and not appropriate for summary judgment." *Southeastern Distributing Co. v. Miller Brewing Co.*, 366 Ark. 560, 568–69, 237 S.W.3d 63, 69 (2006).   This case is no exception.   MD Cowan has offered proof that Williams's and his co-workers' negligence in not following established safety procedures proximately caused the accident.   It is for the jury to decide whether a defect in the rig, Williams's actions, others' actions, or some combination of circumstances caused the accident.

Williams is not entitled to summary judgment on his negligent-design claim for the same reasons.   Genuine issues of material fact exist that must be resolved by a jury:   What were the applicable industry standards of care—ANSI, API, OSHA, or something else?   Did MD Cowan's rig meet the appropriate standard?   Was Williams's alleged negligence a proximate cause of his injuries?   The parties, through their

experts and the record, have created factual issues on all these points. Summary judgment is therefore inappropriate.

Williams is not entitled to summary judgment on his failure-to-warn claim either. Generally, "there is a duty to warn the ultimate user of a product of the risk of the product. This duty exists under either a negligence theory or a strict-liability theory." *Lee v. Martin*, 74 Ark. App. 193, 199–200, 45 S.W.3d 860, 865 (2001) (citation omitted).

Williams alleges that MD Cowan provided no warnings with the rig. MD Cowan, however, says it supplied "manuals of the component part manufacturers and remain[ed] available to DeSoto Drilling for inquiries." *Document No. 89, at 4.* It also argues that DeSoto Drilling was aware of the lockout/tag out capabilities of the rig. *Document No. 89, at 4–5.*

"[A]dequacy of a warning is generally a question of fact for the jury." *Bushong v. Garman Co.*, 311 Ark. 228, 233, 843 S.W.2d 807, 810 (1992). Whether MD Cowan's reliance on the component manufacturers' warnings was acceptable under the circumstances is bound up with whether the rig itself was defective. The warnings' adequacy thus presents a jury issue as well.

-7-

If Williams proves to the jury that MD Cowan's warnings were inadequate, then "a presumption arises that [Williams] would have read and heeded adequate warnings or instructions.  This presumption may be rebutted by evidence which persuades the trier of fact that an adequate warning or instruction would have been futile under the circumstances." *Bushong*, 311 Ark. at 234, 843 S.W.2d at 811 (quotation omitted).

MD Cowan argues that Williams "ignored his own training, the policies and procedures of his employer, and a sign on the ladder he climbed to reach the mast which would have reminded him to follow lock out/tag out procedures."  *Document No. 88, at 16*.  In the face of these contentions and Williams's deposition testimony, a reasonable jury could find that Williams would not have heeded adequate warnings.  Therefore, even if MD Cowan's warnings were inadequate, the evidence viewed in the light most favorable to MD Cowan shows that a jury issue remains on whether adequate warnings would have been futile.  Because genuine issues of material fact exist on all of Williams's claims, his motion for partial summary judgment against MD Cowan is denied.

MD Cowan's motion for summary judgment—presented by adoption of the relevant portions of Rig Tech's summary-judgment motion—fails as well.  The same genuine issues remain when the table is turned and the evidence viewed in the light most favorable to Williams.  Williams's claims raise questions of defectiveness and causation—questions that must be left to the jury in light of the competing expert opinions and other testimony. MD Cowan's motion for summary judgment, *Document No. 104*, is therefore also denied.

**4.  Rig Tech's Liability**.  For the reasons explained as to MD Cowan, neither Williams nor Rig Tech is entitled to summary judgment on Williams's claims.   Like his case against MD Cowan, Williams's case against Rig Tech is tied up in factual questions for the jury:   What standards was Rig Tech required to meet?  Did it meet them?  If not, did its failure proximately cause Williams's injury?   Did Rig Tech provide adequate warnings?  Would adequate warnings have been futile?  The legal analysis is virtually identical; and the disputed facts preclude summary judgment for Williams and Rig Tech too.

But Williams's case against Rig Tech presents a wrinkle—the component-parts doctrine.   This doctrine provides that "suppliers of inherently safe component parts are not responsible for accidents that result when the parts are integrated into a larger system that the component-part supplier did not design or build.  This doctrine applies to claims for negligence and strict liability." *Wagner v. General Motors Corp.*, 370 Ark. 268, 275, 258 S.W.3d 749, 755 (2007) (quotation omitted); *see also In re TMJ Implants Products Liability Litigation v. E.I. DuPont de Nemours & Co.*, 97 F.3d 1050, 1055 (8th Cir. 1996).  Rig Tech argues that the component-parts doctrine bars Williams's claims against it.

Rig Tech may be right.  If its drawworks were an inherently safe component part and Rig Tech did not participate in designing or building the rig or integrating the drawworks into the rig, then Williams's claims against Rig Tech fail.  But factual issues preclude the Court from reaching this conclusion at this point.  First, there is a genuine dispute—arising out of the parties' ANSI/API/OSHA battle—as to whether Rig Tech's drawworks were defective in and of themselves.  If they were, then the component-parts doctrine does not shield Rig Tech from liability.  Further,

-10-

the parties dispute the degree of involvement that Rig Tech had in the drawworks. Williams argues that Rig Tech engineered and designed the drawworks specifically for MD Cowan and this particular rig model. Rig Tech, on the other hand, argues that it merely supplied the drawworks based on MD Cowan's design requirements. Whether the drawworks were defective and how much involvement Rig Tech had in designing the drawworks for integration into Rig #9 are questions for the jury. Only after those questions are answered can the Court determine whether the component-parts doctrine bars Williams's claims against Rig Tech as a matter of law.

**5.   Tesco's and Jeffrey Anderson's Liability.**   Williams's claims against Tesco and Anderson are different. Williams brings a negligence claim against Anderson for telling Derrick Long to move the top drive, which crushed Williams's leg. Williams also alleges that Tesco, as Anderson's employer, is liable for his negligence. And on summary judgment, Williams argues a failure-to-train theory against Tesco.

Williams backs his allegations with contentions about common-law duty and contractual duty. The second contention is misplaced. Anderson

was not a party to the TESCO/Southwest Energy contract. A duty of care sometimes arises from a contractual relationship. *Keck v. American Employment Agency, Inc.*, 279 Ark. 294, 300–01, 652 S.W.2d 2, 6 (1983). But Anderson owed no duty of care to Williams through a contract to which he was not a party.

The duty question as a matter of common law is not so clear. The Court appreciates the parties' briefing but concludes that this issue needs more focused attention on the facts and the law. Anderson and Tesco's motion for summary judgment is denied without prejudice. The Court reopens the dispositive-motion period until 1 November 2011 and invites these Defendants to renew their motion on Anderson's common-law duty to Williams before that date. Williams should respond within thirty days after any renewed motion is filed; Anderson and Tesco may reply within fifteen days. No sur-reply will be allowed.

The Court would benefit from a set of focused excerpts from the evidentiary record on these facts: the relationships and collaboration between DeSoto personnel, Tesco personnel, and individuals from other companies at the well site; all the evidentiary materials about who said and

did what right before the accident; and anything else in the record that illuminates the hectic nature of the work at the well and how the various companies on site managed working with and around each other. Second, the Court would benefit from more legal argument on common-law duty. Beyond the RESTATEMENT (FIRST) OF TORTS, do the RESTATEMENT (SECOND) or RESTATEMENT (THIRD) or treatises offer any guidance on this duty question? And beyond the *Cobb* case, do the more recent Arkansas cases on duty and foreseeability help resolve the issue as to Anderson?

The Court, in sum, needs more help from the parties on the material undisputed facts, and the law, about what common-law duty, if any, Anderson owed Williams in the particular circumstances presented by this drilling operation. Tesco's potential liability on the newly raised failure-to-train theory will, it seems to the Court, rise or fall depending on whether Anderson had a duty and, if so, that duty's scope.

Williams's motion for summary judgment against Anderson and Tesco is denied in any event. Williams has the burden of proof. And even if Anderson owed Williams a duty, whether or not Anderson exercised ordinary care is a question for the jury on the record presented.

-13-

6. *Daubert* **Motions.**  The parties have also filed competing *Daubert* motions to exclude the testimony of opposing expert witnesses.  Williams argues that the Defendants' experts' opinions are irrelevant and unreliable because they focus on employer obligations under OSHA rather than design obligations under ANSI.  But as the Court has noted, jury questions exist on what the applicable industry standards were at the time of the accident and whether the rig complied with those standards.  The parties are entitled to present their experts' opinions to help the jury answer these questions as long as those opinions are relevant and reliable.  *Daubert*, 509 U.S. at 589–91.

Rather than showing irrelevance or unreliability, Williams has shown that the Defendants' experts reached different conclusions and focused on different standards than his experts.  Williams cannot exclude other experts' opinions simply because they do not align with his experts' opinions—that is the nature of competing expert testimony.  Having reviewed the record and reports, the Court concludes that the Defendants' experts have testimony to offer that is sufficiently relevant and reliable to be considered by the jury.

Williams also attempts to exclude testimony from Rig Tech expert C.S. Kirkpatrick because his report does not set forth his qualifications as required by Federal Rule 26(a)(2). Rig Tech says that it thought a copy of Kirkpatrick's CV had already been transmitted to Williams and that any failure to provide it was unintentional. Rig Tech has since filed a copy. The Court takes Rig Tech at its word, concluding that this inadvertent omission should not preclude Kirkpatrick from offering his expert opinion, especially considering that trial is almost eight months away. If it has not already done so, Rig Tech must also supplement its disclosures to include information about other cases in which Kirkpatrick has testified and his compensation in this case. FED. R. CIV. P. 26(a)(2)(B)(v) & (vi).

Finally, Williams argues that Defendants' expert opinions are cumulative and their testimony should therefore be limited. This portion of Williams's motion is premature. Overlap in the experts' reports does not necessarily mean that their testimony will be cumulative and thus perhaps inadmissible. The Court encourages all counsel to work together and streamline each expert's testimony to eliminate duplication. If this remains

an issue, the Court will take it up at the pretrial.   Williams's motion, *Document No. 110*, is denied.

The Defendants also move to exclude the opinions of Williams's experts.  They first argue that the experts' opinions regarding convenience improperly invade the province of the jury.  It is true that the Court must "guard against invading the province of the jury on a question which the jury [is] entirely capable of answering without the benefit of expert opinion."  *Robertson v. Norton Co.*, 148 F.3d 905, 908 (8th Cir. 1998).  But even assuming that convenience is an ultimate issue, expert testimony on that issue is admissible if it would will assist the jury in understanding the evidence or making a determination on that issue.  FED. R. EVID. 702 & 704.  The experts may offer their informed opinions on the convenience issue in light of their specialized knowledge of human and other factors that bear on convenience in industrial settings.

The Court also disagrees with Defendants' contention that because convenience involves subjective judgment, expert opinions about it are necessarily unreliable.  Williams has retained Dr. Kenneth Laughery, a psychologist with experience in human-factors studies, on this point.

-16-

Laughery has "extensive experience in assessing dangers in industrial settings, including drilling operations" and "was retained to explain the dynamics of the occurrence from the standpoint of predictive human behavior[.]" *Document No. 125, at 6.* Laughery's opinion is sufficiently reliable; and it will inform the jury about psychological and human factors that bear on the convenience issue.

The remainder of the Defendants' criticisms about Williams's experts are grounds for robust cross-examination, not exclusion. For example, the Defendants argue that Williams's experts have never designed or developed lockout/tag out devices in the oil and natural gas industry. They also say that an alternate design proposed by one of Williams's experts was developed solely for this litigation. These criticisms go to the weight of each expert's opinion rather than admissibility. On the whole, the experts' opinions are sufficiently reliable and relevant to go to the jury.

\* \* \*

Williams's motions for partial summary judgment against MD Cowan, Rig Tech, Tesco, and Jeffrey Anderson, *Document Nos. 81, 85, & 96,* are denied. Rig Tech's motion for summary judgment, *Document No. 101,*

and MD Cowan's motion for summary judgment by adoption, *Document No. 104*, are denied as well.   Anderson and Tesco's motion for summary judgment, *Document No. 106*, is denied—but as to common-law duty the denial is without prejudice.   Finally, Williams's *Daubert* motion, *Document No. 110*, is denied; and the Defendants' *Daubert* motions, *Document Nos. 99, 105, & 109*, are also denied.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

29 September 2011